1
2
3
4          UNITED STATES DISTRICT COURT
5          DISTRICT OF NEVADA

6    UNITED STATES OF AMERICA,              Case No. 3:20-CR-00006-ART-CLB

7                    Plaintiff             ORDER DENYING COMPASSIONATE
                                                         RELEASE
8            v.
                                            (ECF Nos. 83, 103, 108, 113, 116)
9    FIDEL RODRIGUEZ,

10                  Defendant.

11          Defendant Fidel Rodriguez moves for compassionate release under the First

12   Step Act. 18 U.S.C. § 3582(c)(1)(A). The Government opposes the motion on the

13   basis that Rodriguez has not shown extraordinary and compelling reasons to

14   warrant a reduction. The Court denies Rodriguez's motion.

15          **I.      Factual and Procedural Background**

16          In November 2020, Rodriguez entered a binding guilty plea for one count

17   of Hobbs Act robbery, 18 U.S.C. § 1951, and one count of use of a firearm in

18   relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), after robbing three

19   convenience stores while carrying an unloaded handgun in his pocket. (*See* ECF

20   No. 49.) Rodriguez was twenty years old when he committed the robberies. (ECF

21   No. 83 at 4.)

22          Rodriguez's behavior at the robberies—shaking the hand of one clerk,

23   telling another that he was hungry, drinking beer in a parking lot while seemingly

24   waiting to be apprehended, and slamming his head against the police car when

25   he was apprehended—suggests that Rodriguez was in the midst of a mental-

26   health problem during the robberies. (*Id.*) The Pre-Sentence Report (PSR)

27   presented to the sentencing judge discussed Rodriguez's mental and emotional

28   health, past substance use, and mental-health diagnoses. (PSR ¶¶ 49-51.)

1

Rodriguez has provided an expert declaration and supplement from psychiatrist Dr. Avak Howsepian discussing his possible mental health issues. (ECF Nos. 60, 62, 63, 103-2.) Dr. Howsepian concluded that adequately addressing Rodriguez's mental health issues "requires multimodal, comprehensive, consistent, focused, and flexible mental health treatment in the community." (ECF No. 103-2 at 8.) Dr. Howsepian has never evaluated Rodriguez in person, but he has reviewed Rodriguez's medical records and spoken to members of his family. (*Id.* at 3–4.)

Rordriguez pled guilty through a binding plea, (ECF No. 36), which, once accepted by the Court, required it to impose the sentence agreed to by the parties. *See* Fed. R. Crim. P. 11(c)(1)(C). Under the binding plea agreement, the parties agreed that Rodriguez would receive a twelve-month prison term for the robbery charge (Count 1) followed by a consecutive 84-month sentence for brandishing a firearm (Count 2). The brandishing charge (Count 2) carried a seven-year mandatory minimum sentence to be imposed consecutively to any other sentence. *See* 18 U.S.C. 924(c)(1)(A)(ii). The Court, at that time the Honorable J. Jones, accepted the binding plea and imposed the agreed-upon sentence. (ECF No. 52.)

Rodriguez filed for habeas relief under 28 U.S.C. § 2255, alleging ineffective assistance of counsel from Rodriguez's federal public defender for failing to litigate an Equal Protection defense, failing to investigate Rodriguez's mental illness, and failing to provide a zealous defense. (ECF No. 60.) After ordering the federal public defender to provide a response to Rodriguez's allegations, (*see* ECF Nos. 75, 76-1), the previous Court denied Rodriguez's habeas petition. (ECF No. 92.) The Ninth Circuit then denied Rodriguez a certificate of appealability after determining that he failed to show that the previous Court had denied him a constitutional right. (ECF No. 97.)

In 2023, Rodriguez moved for compassionate release under the First Step Act. (ECF No. 83.) A year after that, while Rodriguez's motion for compassionate

release was pending, the case was transferred to this Court. (*See* ECF No. 98.)

This Court held a hearing on April 24, 2025, after which it instructed the Government to produce updated records from the Bureau of Prisons, including the release plan for Defendant. (ECF No. 107.) These records indicated that Defendant's projected release for home confinement is June 14, 2026, and his projected final release is in December 2026. (*See* ECF No. 115.)

While in prison, Rodriguez has taken advantage of the limited educational programming available to him, including tutoring other inmates to prepare for their GED examinations. (*See* ECF No. 112-2 at 2.) He has also maintained contact with his supportive family. (*See* ECF No. 83 at 16.) Rodriguez has had few disciplinary incidents besides one charge of assaulting another inmate without serious injury. (*See* ECF No. 115 at 78.)

## II.    Standard of Review

Federal district courts generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). As "an exception in rare cases," however, courts may apply the First Step Act's 2018 amendments to Section 3582(c) to reduce a sentence. *See United States v. Etzel*, 466 F. Supp. 3d 1135, 1137 (D. Or. 2020).

A defendant seeking a sentence reduction under the First Step Act must first exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i). Once administrative remedies are exhausted, a district court may reduce a sentence if it finds that extraordinary and compelling reasons warrant a reduction, that a reduction coheres with applicable policy statements issued by the Sentencing Commission, and that the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of the requested sentence reduction. *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (internal citations and formatting removed). A district court "may deny compassionate release if a defendant fails to satisfy any of these grounds." *Id.*

The Sentencing Commission's policy statement, U.S.S.G. § 1B1.13, provides the following examples of "extraordinary and compelling reasons:"

**(1) Medical Circumstances of the Defendant.**

**(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(B)** The defendant is--
    **(i)** suffering from a serious physical or medical condition,
        **(ii)** suffering from a serious functional or cognitive impairment, or
    **(iii)** experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

**(* * * *)**

**(5) Other Reasons.**–The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

**(6) Unusually Long Sentence.**–If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

This policy statement may inform a district court's discretion when

considering § 3582(c)(1)(A) motions. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

### III.    Analysis

Because Rodriguez has exhausted administrative remedies, (*see* ECF No. 83 at 14), the Court considers whether extraordinary or compelling reasons justify reducing his sentence.

### A. Rodriguez's Mental Health Treatment in Prison

Rodriguez argues that the substandard treatment of his mental health in prison and the possibility of better mental health treatment outside of prison justify reducing his sentence. The Government responds that the extraordinary and compelling medical reasons contemplated by 18 U.S.C. § 3582(c) address situations where a prisoner's health condition renders that prisoner vulnerable to irreparable harm or unable to care for oneself in prison.

To qualify under the policy statement, Rodriguez must show that his medical condition diminishes his ability "to provide self-care" in prison and that he is not expected to recover from such a condition, or that his condition "requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *See* U.S.S.G. § 1B1.13(b)(1)(B), (C); *see United States v. Miller*, No. 15-CR-00471-CRB-1, 2021 WL 2711728, at *4 (N.D. Cal. July 1, 2021); *United States v. Muhammad*, No. CR20-156, 2022 WL 4109102, *2 (W.D. Wash. Sept. 8, 2022); *United States v. Prieto*, No. 3:19-cr-142, 2022 WL 17718422, at *5 (W.D. Ky. Dec. 15, 2022); *United States v. Roane*, No. 3:20-cr-158, 2022 WL 16722363 (W.D.N.C. Nov. 4, 2022); *United States v. Bonner*, No. CR19-226, 2022 WL 4483104, at *2 (W.D. Pa. Sept. 27, 2022); *United States v. McClain*, No. 3:15-cr-5, 2022 WL 6238685, at *2 n. 2 (S.D. Ind. Sept. 14, 2022). Claims about a federal prison's negligent provision of health care or negligent care may be addressed through the Federal Tort Claim Act or the *Bivens* cause of action, not compassionate release. *See Marquez v.*

*Rodriguez*, 2021 WL 2826075, at *11 (S.D. Cal. July 6, 2021).

Rodriguez has provided evidence from a psychiatrist who has not evaluated him that he may or may not be receiving appropriate psychiatric treatment while in BOP custody. He has provided declarations that his mental health is deteriorating while in prison and that he would be better cared for outside of prison with his supportive family and access to individualized, private care. While sympathetic, the Court finds that Rodriguez has not shown that the BOP's provision of medical care renders him subject to irreparable harm or unable to care for himself in prison.

**B. Disproportionate Sentencing Policies**

Rodriguez argues that this Court may "unstack" consecutive sentences imposed by 18 U.S.C. § 924(c) under the compassionate release provisions of the First Step Act after finding that such consecutive sentences are so disproportionate that they constitute an "extraordinary and compelling" reason to reduce a sentence.

Unstacking consecutive sentences based on stacked § 924(c) convictions is an appropriate use of the First Step Act. *See United States v. Wells*, No. 2:14-CR-00280-JCM-GWF, 2022 WL 1720987, at *3 n.4 (D. Nev. May 27, 2022) (reducing 112-year sentence for string of armed robberies to ten years); *see also* U.S.S.G. § 1B1.13(b)(6).

The circumstances presented by Rodriguez's case meaningfully differ from other cases in this district where courts have unstacked 924(c) convictions that resulted in extraordinarily long prison terms. *See United States v. Jordan*, No. 2:13-cr-0221-APG-CWH, 2021 WL 3612400, *2 (D. Nev. Aug. 13, 2021) (reducing 60-year sentence based on three convictions under § 924(c) to eight years in prison); *United States v. Williams*, No. 2:13-CR-00221-APG-CWH, 2021 WL 3604835, at *2 (D. Nev. Aug. 13, 2021) (reducing 121-year sentence for string of armed robberies to eight years of custody and an additional five years of home

1    detention). Rodriguez's underlying offense consisted of three armed robberies,

2    and Rodriguez pled to one count of interference with commerce by robbery and

3    one count of use of a firearm in relation to a crime of violence for an eight-year

4    sentence. (*See* ECF No. 37.) Rodriguez's eight-year sentence included a

5    mandatory seven-year term that the court was required to impose consecutive to

6    any other term imposed. Though lengthy, this sentence is not extraordinary.

7    Further, records confirm that Rodriguez is scheduled for home confinement after

8    about six-and-a-half years of confinement. (*See* ECF No. 115 at 88.) His sentence

9    is not so disproportionate as to justify a sentence reduction under the same

10   rationale as *Wells*, *Jordan*, or *Williams*.

11        Rodriguez next argues that a Department of Justice policy guideline from

12   2022 advising against using mandatory minimums weighs in favor of reducing

13   his sentence. At the hearing on this motion, the Government provided notice that

14   the policy memo referenced by Rodriguez had been rescinded and replaced with

15   a policy guideline instructing federal prosecutors to pursue the most serious,

16   readily provable offense, including those with mandatory minimum sentences.

17   (*See* ECF No. 107 at 7–8.) This has effectively mooted Rodriguez's argument.

18        **C. Faulty Sentencing and Discriminatory Prosecution**

19        Rodriguez argues that his lower sentencing and the alleged discriminatory

20   prosecution that led to his conviction justify reducing his sentence.

21        Rodriguez argues that the sentencing court did not adequately consider his

22   mental health history and diagnosis of bipolar disorder. The previous Court had

23   access to this information in the PSR, which discussed Rodriguez's bipolar

24   disorder and inability to get psychiatric medication or attend treatment after he

25   lost his insurance.

26        Rodriguez also argues that the fact that the white get-away driver in the

27   robbery was not charged for the same crime weighs in favor of reducing his

28   sentence. This is the same basis for the equal protection claim Rodriguez argued

1   in his habeas petition. (*See* ECF Nos. 60, 92.) In rejecting this claim on habeas
2   review, the previous Court observed that Rodriguez's accomplice undertook
3   significantly different conduct—driving a car versus brandishing a firearm—that
4   prevented it from finding that racial prejudice motivated the charging decision.
5   (*See* ECF No. 92 at 11–13.) The Ninth Circuit held Rodriguez failed to make a
6   substantial showing that the previous Court's disposition of this claim denied
7   him a constitutional right. (*See* ECF No. 97.) This Court similarly lacks a basis to
8   reduce Rodriguez's sentence based on the prosecution's decision not to charge
9   his accomplice.

10      Rodriguez next argues that the sentencing disparity between his robbery
11  charge and a brandishing offense weighs in favor of compassionate release, that
12  his conduct during the armed robberies was non-violent because the firearm was
13  unloaded, that he only robbed $120 from the three stores, that he was only twenty
14  years old at the time, and that he had only one prior misdemeanor before the
15  offense all weigh in favor of reducing his sentence. These factors, considered
16  alongside Rodriguez's other arguments, do not rise to the level of extraordinary
17  and compelling reasons to reduce his sentence.

18  **IV.   Conclusion**

19      The Court grants Defendant's motion to supplement the record. (ECF No.
20  108.)

21      The Court denies Defendant's motion for Compassionate Release (ECF No.
22  83).

23      //
24      //
25      //
26      //
27      //
28      //

1       In light of the sensitive medical and personally identifying information

2   present in the parties' exhibits, the Court grants the pending motions to seal (ECF

3   Nos. 103, 113, 116).

4       Dated this 29th day of July, 2025.

5

6   _____
    ANNE R. TRAUM

7   UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28